UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

SANDRA SHAW,

    Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE,

    Defendant.

2:08-CV-01044-LRH-LRL

ORDER

This is an appeal of the United States Department of Justice's denial of Plaintiff Sandra Shaw's claims under the Radiation Exposure Compensation Act, 42 U.S.C. § 2210 Note ("RECA").

**I    Facts and Procedural History**

Plaintiff is the daughter of Paul G. Elledge and Robbie Sue Elledge, both of whom are deceased. On July 12, 2007, Plaintiff filed two RECA claims on her parents' behalf.[1]

**A. Paul G. Elledge Claim**

In the claim filed on behalf of her father, Paul Elledge, Plaintiff alleged that Paul contracted lung cancer following exposure to "fallout emitted during the Government's atmospheric nuclear tests." *See* 42 U.S.C. § 2210 Note, Sec. 2(a)(1). Plaintiff alleged that Paul was exposed to the

---

[1] Section 6(c)(4) authorizes survivors, including surviving children, to file claims and receive payments on behalf of eligible individuals who are deceased.

fallout while in (1) Hayden, Gila County, Arizona, in 1941, (2) Franklin, Greenlee County, Arizona, and in Seattle, King County, Washington, from 1951 to 1958, and (3) Hayden, Gila County, Arizona, from May through August of 1962.

Although Plaintiff based her original claim on each of these allegations, Plaintiff appealed only the government's conclusions concerning her father's presence in Hayden, Arizona, in 1962. Accordingly, the court will limit its review to this aspect of Plaintiff's claim.

To establish her father's presence in Hayden, Plaintiff submitted a variety of evidence, including handwritten home rental receipts, a letter, a card, a recreational diploma, a store receipt, and two photographs. In addition, before entering a final decision, the Assistant Director twice gave Plaintiff an opportunity to submit additional evidence in support of her claim. In doing so, the Assistant Director thoroughly reviewed each piece of evidence and explained to Plaintiff why the evidence was insufficient. In response, Plaintiff submitted a letter and two personal statements.

The Assistant Director reviewed Plaintiff's evidence and concluded that the evidence was insufficient to establish her father's presence in Hayden during the summer of 1962. In particular, the Assistant Director determined that Plaintiff's evidence either did not reflect Paul's presence in Hayden in 1962 or did not bear sufficient indicia of authenticity to meet the RECA regulation's trustworthiness standard.

On March 19, 2008, the government received Plaintiff's appeal of her claim's denial. As noted above, Plaintiff appealed only the Assistant Director's conclusion that her father was not present in Hayden, Arizona, in 1962. In support of her appeal, Plaintiff cataloged the previously submitted evidence and again declared that in 1962, she lived in Hayden with her parents.

On June 12, 2008, the Appeals Officer affirmed the denial of Plaintiff's claim. In doing so, the Appeals Officer found that the Assistant Director conducted a thorough evaluation of each piece of evidence. The officer further found that the Assistant Director's conclusion that much of the evidence failed to meet the trustworthiness standard set forth in 28 C.F.R. § 79.5(b) was sound

and reasonable.

### B. Robbie Sue Elledge Claim

On July 12, 2007, Plaintiff also filed a RECA claim on behalf of her deceased mother, Robbie Sue Elledge. Plaintiff alleged that her mother contracted cancer of the stomach and colon following exposure to fallout emitted during the government's atmospheric nuclear tests while she was present in Gila County, Arizona, for an unspecified period of time.

The Assistant Director rejected Plaintiff's claim. In particular, after giving Plaintiff time to submit additional evidence and after reviewing the evidence, the Assistant Director concluded that the medical records did not support Plaintiff's assertion that her mother contracted stomach and colon cancer. Instead, the records indicated that her mother was diagnosed with recurrent cervical cancer. In a letter dated July 30, 2007, and in the subsequent decision dated October 10, 2007, the Assistant Director explained to Plaintiff that cervical cancer is not a compensable disease under RECA. As such, the Assistant Director denied Plaintiff's claim.

On March 19, 2008, the government received Plaintiff's appeal. On June 12, 2008, the Appeals Officer affirmed the denial, agreeing that the medical evidence did not demonstrate that Robbie Sue acquired stomach and colon cancer.

## II. Statutory and Regulatory Background

In 1990, Congress enacted RECA to recognize and compensate individuals for injuries suffered as a result of this country's nuclear research and weapons program. 42 U.S.C. § 2210 Note, Sec. 2(a). In particular, RECA provides for compensation to individuals who have contracted certain diseases from (1) exposure to radiation resulting from 'downwind fallout[,]" (2) underground uranium mining, and (3) participation at atmospheric nuclear testing sites.

Through RECA, Congress directed the Attorney General to establish regulations and procedures through which individuals suffering from the specified injuries could submit claims for compensation. Pursuant to this authority, in 1992, the Attorney General created the Radiation

Compensation Exposure Program ("RECP"), which is charged with administering RECA.

After a claim for compensation is submitted to the RECP, the RECP's Assistant Director reviews the claim and all supporting documentation and renders a decision accepting or denying the claim. *See* 28 C.F.R. § 79.72. In determining whether claims meet the requirements of the Act, RECA directs the Attorney General to resolve all doubt in favor of the claimant.

A claimant seeking to appeal the Assistant Director's decision may do so by submitting a written request for appeal within sixty days of the date of the Assistant Director's decision. 28 C.F.R. § 79.73(a). The decision of the Appeal's Officer is a final agency action entitling the claimant to seek judicial review in a district court of the United States. 28 C.F.R. §§ 79.73(d), (e). RECA directs the reviewing district court to "review the denial on the administrative record and [to] hold unlawful and set aside the denial if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 42 U.S.C. § 2210 Note, Sec. 6(l).

Review under the arbitrary and capricious standard is narrow, and the court must not substitute its own judgment for that of the agency. *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc) (citations omitted).[2] Nonetheless, the court must "engage in a substantial inquiry" and a "thorough, probing, in-depth review." *Or. Natural Res. Council Fund v. Brong*, 492 F.3d 1120, 1125 (9th Cir. 2007) (quoting *Native Ecosystems Council v. U.S. Forest. Serv.*, 418 F.3d 953, 960 (9th Cir. 2005)). To meet its burden under this standard, an agency must present a "rational connection between the facts found and the conclusion made." *Id.* Thus, "the court will reverse a decision as arbitrary and capricious only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of a problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not

---

[2]Although the decision in *Lands Council* and the remaining decisions cited in this paragraph address the standard of review under the Administrative Procedures Act, that standard is identical to the standard set forth in RECA. *See* 5 U.S.C. § 706(2)(a) "("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law[.]")

4

be ascribed to a difference in view or the product of agency expertise." *Lands Council*, 537 F.3d at 987 (citations and internal quotations omitted).

**III.  Discussion**

Plaintiff applied for an award under the "downwinder" provisions of RECA, which are designed to compensate victims exposed to fallout from above-ground nuclear testing conducted by the United States at the Nevada Test Cite. A claimant seeking to establish a downwinder claim must satisfy a two-part test. First, the claimant must demonstrate that she was physically present in an "affected area" for at least two years from January 21, 1951, through October 31, 1958, or for the entire period beginning June 30, 1962, through July 31, 1962. 42 U.S.C. § 2210 Note, Sec. 4(a)(2). The "affected areas" RECA identifies includes, "in the State of Arizona, the counties of Coconino, Yavapai, Navajo, Apache, and Gila, and that part of Arizona that is north of the Grand Canyon." 42 U.S.C. § 2210 Note, Sec. 4(b)(1)(C).

Second, the claimant must demonstrate that after her presence in an affected downwind area for the specified period, the claimant developed a "specified disease[.]" *See* 42 U.S.C. § 2210 Note, Sec. 4(a)(2). Provided that the onset of the disease is at least five years after the first exposure, the "specified diseases" covered by the Act include multiple myeloma, lymphomas (other than Hodgkin's disease), and primary cancer of the thyroid, male or female breast, esophagus, stomach, pharynx, small intestine, pancreas, bile ducts, gall bladder, salivary gland, urinary bladder, brain, colon, ovary, liver (except if cirrhosis or hepatitis B is indicated), or lung. 42 U.S.C. § 2210 Note, Sec. 4(b)(2).

**A. Paul Elledge Claim**

The government argues that the court should deny Plaintiff's appeal because the RECP reasonably determined that Plaintiff's documentation lacked sufficient indicia of authenticity and trustworthiness to establish Paul's presence in Hayden, Arizona, from June 30, 1962, to July 31,

1962.³  To demonstrate her father's presence in Hayden, Arizona, Plaintiff submitted the following evidence: (1) four torn squares of paper described as receipts given to Paul by his landlord for rent paid between May 1, 1962, and August 1, 1962; (2) a three-page letter dated July 21, 1962, that begins "Dear Paul," is signed by "Gene[,]" and includes a note from "Carol" asking whether Sandra likes Hayden and stating that she and Gene would come visit "this August 62"; (3) an undated "New Year" card with no accompanying envelope, but a note on the back of the card stating "July 1962" and "Paul Sue and Sandra, Charlie missed Sandra how is Hayden?"; (4) square dancing diplomas issued to Paul and his wife at an unidentified location on April 5, 1963; (5) a receipt issued to Paul's wife on April 12, 1963, in San Manuel, Pinal County, Arizona; (6) a photograph of a man with an airplane, with the words "taken just after Paul's first flying lesson 2-11-73" handwritten across the top; (6) an undated photograph of a man, child, and dog; and (7) two "personal statements."

To establish proof of physical presence in an affected area, a claimant may submit "any trustworthy contemporaneous record that, on its face or in conjunction with other such records, establishes that the claimant was present in the affected area for the requisite period during the designated time period." 28 C.F.R. § 79.13(a).  Examples of acceptable records include governmental records, records of accredited educational institutions, utility records, library records, historical society records, records of religious organizations, business records, records of recognized civic or fraternal organizations, and medical records.  *Id.*  In addition, claimants may submit original postcards and envelops, bearing a postmark and a cancelled stamp, from letters addressed to the claimant or an immediate family member during the requisite time period.  *Id.*

In reviewing the evidence a claimant submits in support of a claim, the RECP may only consider evidence that bears "sufficient indicia of authenticity or a sufficient guarantee of trustworthiness."  28 C.F.R. § 79.5(b).  Likewise, the RECP cannot consider evidence that is in

---

³It is undisputed that Hayden is located in Gila County, Arizona, an "affected area" covered by RECA.

"such a physical condition, or contains such information, that otherwise indicates the record or document is not reliable or trustworthy." *Id.*

Here, after reviewing the Assistant Director's decision and the evidence Plaintiff submitted in support of her claim, the Appeals Officer concluded that it was "fair and reasonable" for the Assistant Director to conclude that Plaintiff's evidence failed to meet the trustworthiness standard set forth in 28 C.F.R. § 79.5(b). The court agrees. The Assistant Director carefully and thoroughly reviewed Plaintiff's evidence. Noting the inconsistencies and lack of information contained in the documents, the Assistant Director articulated a rational connection between the evidentiary deficiencies and the denial of her claim by explaining why the documents did not meet RECA's trustworthiness standards.[4] Likewise, the Assistant Director properly refused to consider Plaintiff's personal statements because, in reviewing a claim, the RECP is to accept and consider written affidavits or declarations only in certain limited circumstances, none of which are relevant to this case. *See* 28 C.F.R. § 79.5(c).

The court has reviewed the administrative record and the parties' arguments and finds that nothing before the court suggests that the RECP's denial of Plaintiff's claim was

---

[4] For example, as to the square dancing diplomas, the Assistant Director explained that the diplomas did not support Plaintiff's claim because the receipts did not reflect the location of the classes. Likewise, the Assistant Director did not consider the receipt issued to Plaintiff's mother from Pinal County, Arizona, because Pinal County is not included in RECA's designated affected areas. With regard to the photographs, the Assistant Director also concluded that the photographs did not support Plaintiff's claim because Plaintiff failed to present evidence indicating that they were taken in an affected area during the statutory exposure period.

With regard to the July 21, 1963, letter to Paul signed by "Gene[,]" the Assistant Director explained that nothing in the letter reflected Paul's address and that the note on the last page asking whether "Sandra likes Hayden," was written in a distinctly different handwriting. The Assistant Director further noted that the greeting card dated July, 1962, was also written in two distinctly different handwriting styles. The Assistant Director then concluded that neither the letter nor the card established Paul's presence in Hayden, Arizona, during July of 1962, because the documents did not bear sufficient indicia of authenticity.

Finally, as to the rental receipts, the Assistant Director concluded that the receipts did not contain any notation establishing an address for Paul during the time described. Further, the Assistant Director stated that the differences in handwriting on the rental receipts, as well as the letter and card, undermined the reliability of those documents. As such, the Assistant Director refused to accept the documents as proof of Paul's presence in Hayden.

7

arbitrary, capricious, an abuse of discretion, or otherwise in violation of the law. Based on the lack of information and inconsistences contained in Plaintiff's evidence, it was reasonable for the RECP to conclude that Plaintiff's evidence did not meet the standards enumerated in 28 C.F.R. § 79.13(a) and 28 C.F.R. § 79.5(b). Further, the RECP provided Plaintiff ample opportunity to submit additional documentation to confirm Paul's residence in Hayden, Arizona, during the relevant time period, and Plaintiff was unable to do so. Accordingly, as to the claim filed on behalf of Plaintiff's father, the court will deny Plaintiff's appeal.

### B. Robbie Sue Elledge Claim

The RECP also denied Plaintiff's claim filed on behalf of her mother, Robbie Sue, finding that Plaintiff's evidence did not establish that her mother contracted a compensable disease.[5] While Plaintiff alleged that her mother contracted cancer of the stomach and the colon, and while section 4(b)(2) of the Act covers both of these conditions, the Assistant Director found that the medical evidence consistently demonstrated that Robbie Sue had metastatic cervical carcinoma. The Assistant Director further concluded that RECA does not cover this disease.

After reviewing the medical evidence, the Appeals Officer likewise concluded that Robbie Sue had cervical cancer, not stomach or colon cancer. The Appeals Officer further agreed with the Assistant Director's reasoning distinguishing stomach and abdominal cancer and concluding that RECA did not provide compensation for cervical cancer.

The court has reviewed the administrative record and the parties' arguments and finds the RECP's finding were not arbitrary, capricious, an abuse of discretion, or otherwise in violation of the law. Based on the medical evidence before the RECP and the statutory text, it was reasonable for the RECP to conclude that Robbie Sue had cervical cancer and that cervical cancer is not a

---

[5] Here, as before the Appeals Officer, Plaintiff does not specifically challenge this finding. Nonetheless, because Plaintiff challenges the Appeals Officer's decision generally and because the Appeals Officer considered whether Robbie Sue contracted a compensable disease, this court will review that decision.

compensable disease.[6] Accordingly, the court will affirm the RECP's denial of Plaintiff's claim.

## IV. Conclusion

The court understands Plaintiff's frustration, and the court emphasizes that nothing in this order should be read to suggest that Plaintiff has acted in an untrustworthy manner. Nonetheless, under RECA and its governing regulations, the RECP is permitted to consider evidence only if it meets certain standards. The RECP has concluded that Plaintiff's evidence does not meet these standards, and the RECP has thoroughly and reasonably articulated its reasons for so finding. Under these circumstances, the court must deny Plaintiff's appeal.

IT IS THEREFORE ORDERED that Plaintiff's RECA appeal is DENIED.

The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED this 9th day of June, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[6]Further, even if Plaintiff had submitted evidence indicating that her mother suffered from a covered disease, Plaintiff has not established that her mother was present in an affected area during the relevant time period.